**IN THE DISTRICT COURT OF THE UNITED STATES**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

J.R., a minor, and Jane Roe, individually and in her capacity as guardian and parent of Plaintiff J.R.,

Plaintiffs,

v.

Michele Mancino, Thomas E. Aspinwall, Telegram Messenger Inc. (d/b/a "Telegram"), and Perry Street Software (d/b/a "Scruff"),

Defendants.

Case No. 2:23-cv-02519-BHH-MGB

**REPORT AND RECOMMENDATION**

Plaintiffs filed this civil action on June 7, 2023, alleging, *inter alia*, claims of assault and battery, negligence, civil conspiracy, intentional infliction of emotional distress, invasion of privacy, products liability, unfair trade practices, and violations of 18 U.S.C. §§ 1595, 1591, and 2255. (Dkt. No. 1.) Currently before the Court is a Motion to Dismiss filed by Defendant Perry Street Software ("Defendant Perry Street"). (Dkt. No. 49.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate Judge for consideration.[1] Accordingly, this motion has been referred to the undersigned. For the reasons set forth below, the undersigned **RECOMMENDS** that Defendant Perry Street's Motion to Dismiss (Dkt. No. 49) be **GRANTED**, and that Defendant Perry Street be **DISMISSED** as a defendant in this civil action.

[1] Defendant Mancino is proceeding *pro se* in this civil action.

## RELEVANT BACKGROUND[2]

This case arises from the sexual abuse of a child, Plaintiff J.R. (*See generally* Dkt. No. 1.) According to the Complaint, Defendant Mancino, Plaintiff J.R.'s father, connected with Defendant Aspinwall using Defendant Perry Street's web application, Scruff.[3] (*Id.*) The Complaint alleges that, through Scruff, Defendant Mancino sent Defendant Aspinwall explicit photos of Plaintiff J.R., as well as videos in which Plaintiff J.R. performed various sexual acts on Defendant Mancino. (*Id.*) The Complaint alleges that Defendants Mancino and Aspinwall also used Scruff (and, later, another internet application run by Defendant Telegram Messenger Inc.) to discuss their plans to sexually abuse Plaintiff J.R. together. (*Id.*)

Plaintiffs claim that Defendant Aspinwall was previously arrested for second-degree sexual exploitation of a minor[4] and that "Defendant Perry Street Software knew or should have known of Defendant Aspinwall's history of using internet platforms to sexually assault minors." (*Id.*) Plaintiffs claim that "[p]ermitting Defendant Aspinwall to use [the application] directly brought about harm that Plaintiffs have suffered." (*Id.*) The Complaint further alleges that "Defendant Perry Street [], through its platform, Scruff, facilitated Defendant Aspinwall's crimes by allowing him, a known sexual predator, to connect with other potential sexual predators on its platform" and that "[i]f Defendant Perry Street [] had been appropriately monitoring and policing its platform [], Defendant Aspinwall, a known sexual predator, would not [have] been able to create an account, or at the very least, would have been monitored to stop him from repeating his dangerous past alleged behavior." (*Id.*) Thus, Plaintiffs claim that Defendant Perry Street facilitated the harm

[2] Due to the disturbing nature of the allegations set forth in the Complaint, this Background section is significantly limited and includes only those factual allegations that are directly relevant to this Report and Recommendation.
[3] Scruff is a web application that provides a matchmaking platform for men. (Dkt. No. 1 at 2; Dkt. No. 49 at 1; Dkt. No. 56 at 3.)
[4] The Complaint does not allege that Defendant Aspinwall was convicted of this crime, nor does it allege that Defendant Aspinwall is or was a registered sex offender. (*See generally* Dkt. No. 1.)

suffered by Plaintiffs through its "negligence in failing to safeguard [its] platform[] from known sexual predators." (*Id.*) Plaintiffs further claim that Defendant Perry Street should be held liable for harm caused to Plaintiffs because of "what Scruff has done in designing, operating, and maintaining the product it offers consumers." (Dkt. No. 56 at 4.)

Plaintiff Jane Roe, brings this lawsuit on behalf of herself and her son, Plaintiff J.R., a minor. (Dkt. No. 1.) On March 29, 2024, Defendant Perry Street filed a motion to dismiss all of Plaintiffs' claims against it. (Dkt. No. 49.) Plaintiffs responded to the motion on April 26, 2024. (Dkt. No. 56.) Defendant Perry Street replied on May 3, 2024. (Dkt. No. 58.) As such, the motion before the Court has been fully briefed and is ripe for disposition.

## LEGAL STANDARD

Defendant Perry Street moves to dismiss Plaintiffs' claims against it pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (*See generally* Dkt. No. 49.) On a motion to dismiss pursuant to Rule 12(b)(6), a "complaint must be dismissed if it does not allege 'enough facts to state a claim to relief that is plausible on its face.'" *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In reviewing a motion to dismiss an action pursuant to Rule 12(b)(6) . . . [a court] must determine whether it is plausible that the factual allegations in the complaint are 'enough to raise a right to relief above the speculative level.'" *Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555). "A plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

For purposes of a motion to dismiss, the district court must "take all of the factual allegations in the complaint as true." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "In considering

a motion to dismiss, [the court] accept[s] the complainant's well-pleaded allegations as true and view[s] the complaint in the light most favorable to the non-moving party." *Stansbury v. McDonald's Corp.*, 36 F. App'x 98, 98–99 (4th Cir. 2002) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). However, while a court must draw all reasonable inferences in favor of the plaintiff, it need not accept "legal conclusions drawn from the facts, . . . unwarranted inferences, unreasonable conclusions or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999); *Giarratano*, 521 F.3d at 298).

**DISCUSSION**

As noted, Defendant Perry Street moves to dismiss all of Plaintiffs' claims against it. (Dkt. No. 49.) These claims include: (1) negligence/recklessness/willful and wanton conduct; (2) negligence *per se*; (3) civil conspiracy; (4) outrage/intentional or reckless infliction of emotional distress; (5) products liability—design defect; (6) violations of 18 U.S.C. §§ 1595 and 1591; (7) violation of 18 U.S.C. § 2255; (8) violation of S.C. Code Ann. § 16-3-2010 *et seq*.; (9) necessaries; and (10) unfair trade practices in violation of S.C. Code Ann. § 39-5-10 *et seq*. (*See generally* Dkt. No. 1.) Defendant Perry Street asserts that Plaintiffs' claims against it are barred by the Communications Decency Act ("CDA") and should therefore be dismissed in full. (Dkt. No. 49 at 4.) For the reasons set forth below, the undersigned agrees and **RECOMMENDS** that Defendant Perry Street's Motion to Dismiss be **GRANTED**.

Defendant Perry Street alternatively argues that "the Court should dismiss the state-law claims under S.C. Code § 23-3-555(C)(6) and all claims under *Iqbal*." (*Id.*) Because the undersigned recommends that Defendant Perry Street is entitled to immunity under the CDA, the undersigned need not address Defendant Perry Street's alternative arguments. However, the

undersigned notes that Plaintiffs' response brief fails to address several of the arguments set forth in Defendant Perry Street's motion. (*See generally* Dkt. No. 56.) Plaintiffs do not acknowledge Defendant Perry Street's contentions regarding Plaintiffs' claims of negligence *per se*, civil conspiracy, outrage, violations of 18 U.S.C. §§ 1595 and 1591, violation of 18 U.S.C. § 2255, and necessaries. (*Id.*) Plaintiffs also fail to respond to Defendant Perry Street's statutory defense against Plaintiffs' state law claims. (*Id.*) Thus, to the extent that the District Judge disagrees with the recommendations set forth below and/or finds that any of the aforementioned claims are not covered by CDA immunity, the undersigned recommends that they be dismissed on this basis. *See, e.g.*, *Wright v. Enviri Corp.*, No. 3:23-cv-4978-JDA-PJG, 2024 WL 1259728, at *3 (D.S.C. Mar. 1, 2024) (noting that plaintiff abandoned claim by failing to respond to argument set forth in defendant's motion to dismiss), *adopted*, 2024 WL 1259182 (D.S.C. Mar. 25, 2024); *Dixon v. Boeing Co.*, No. 2:20-cv-01356-BHH-MGB, 2020 WL 9211161, at *6 (D.S.C. May 11, 2020) (explaining that plaintiff abandoned claims by failing to argue their merits in his response to motion to dismiss), *adopted*, 2021 WL 837479 (D.S.C. Mar. 5, 2021); *Waiters v. Sci. Applications Int'l Corp.*, No. 2:17-cv-3227-BHH-BM, 2019 WL 5874132, at *10 (D.S.C. May 10, 2019), *adopted*, 2019 WL 4462810 (D.S.C. Sept. 18, 2019) (stating that plaintiff abandoned claim by failing to address argument raised in defendant's motion to dismiss); *Jones v. Family Health Ctr., Inc.*, 323 F. Supp. 2d 681, 690 (D.S.C. 2003) (noting that claim not addressed in opposition memorandum had been abandoned); *Sawyers v. United Parcel Serv., Inc.*, C/A No. 1:18-cv-1037, 2019 WL 4305771, at *3 (M.D.N.C. Sept. 11, 2019) (collecting cases showing that "[t]his district and others within the Fourth Circuit agree that failing to respond to an argument constitutes an abandonment of a claim").

## I. Communications Decency Act

"The CDA establishes immunity for providers of interactive computer services that provide an online platform allegedly used by third-parties to facilitate wrongful conduct." *Mazur v. eBay Inc.*, No. C 07-3967 MHP, 2008 WL 618988, at *9 (N.D. Cal. Mar. 4, 2008). The CDA states, in relevant part, that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). The statute defines the term "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet . . . ." 47 U.S.C. § 230(f)(2).[5]

The CDA mandates that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." 47 U.S.C. § 230(e)(3). As the Fourth Circuit has explained, § 230 creates a "federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service." *Zeran v. America Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997). Indeed, "Congress [through the CDA has] established a general rule that providers of interactive computer services are liable only for speech that is properly attributable to them." *Nemet Chevrolet, Ltd.*, 591 F.3d at 254 (citing *Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 419 (1st Cir. 2007)). As such, "state-law plaintiffs may hold liable the person who creates or develops unlawful content, but not the interactive computer service provider who merely enables that content to be posted online." *Id.* (citing *Doe v. MySpace, Inc.*, 528 F.3d 413, 419 (5th Cir. 2008); *Chicago Lawyers' Comm. for Civil Rights Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666, 672 (7th Cir. 2008);

---

[5] Here, it is undisputed that Defendant Perry Street's application, Scruff, qualifies as an "interactive computer service" under the CDA. (*See generally* Dkt. Nos. 49, 56, 58.)

*Zeran*, 129 F.3d at 330–31). Further, "the majority of federal courts have interpreted the CDA to establish broad 'federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of a service.'" *Directory Assistants, Inc. v. Supermedia, LLC*, 884 F. Supp. 2d 446, 450 (E.D. Va. 2012) (quoting *Whitney Info. Network, Inc. v. Xcentric Ventures, LLC*, 2:04-cv-0047, 2008 WL 450095 at *7, n. 21 (M.D. Fla. Feb. 15, 2008); *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321 (11th Cir. 2006)).

## II.     Analysis

To show that it is entitled to the CDA's protections, a defendant must establish that: (1) it is a "'provider or user of an interactive computer service'"; (2) the plaintiff's claims hold it "responsible 'as the publisher or speaker of any information'"; and (3) the relevant information was "'provided by another information content provider.'" *Henderson v. Source for Pub. Data, L.P.*, 53 F.4th 110, 119 (4th Cir. 2022) (referencing *Nemet Chevrolet, Ltd.*, 591 F.3d at 254; 47 U.S.C. § 230(c)(1)). As described in greater detail below, Defendant Perry Street has established all three elements. Plaintiffs' claims against it are therefore barred by the CDA and should be dismissed.

### A.     Interactive Computer Service

The parties agree that Defendant Perry Street's application, Scruff, qualifies as an interactive computer service under the CDA. (*See generally* Dkt. Nos. 1, 49, 56, 58); *see also* 47 U.S.C. § 230(f)(2) (defining "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet . . . ."). Thus, Defendant Perry Street can establish the first requirement for CDA protection.

**B. Information Content Provider**

Turning to the remaining elements, the Complaint plainly alleges that another "information content provider" provided the communications at issue in this civil suit. (Dkt. No. 1 at 27.) Indeed, the Complaint states that "Defendants Mancino and Aspinwall *created the content that harmed Plaintiffs*." (*Id.*) (emphasis added).

Nonetheless, in their response brief, Plaintiffs contend that Defendant Perry Street made a "material contribution" to the illegal communications at issue such that Defendant Perry Street can be considered an information content provider in its own right. (Dkt. No. 56 at 8–9.) Specifically, Plaintiffs contend that Defendant Perry Street materially contributed to the alleged misconduct of Defendants Mancino and Aspinwall by failing to properly monitor the content of communications exchanged on its platform, and by failing to implement policies to identify and eliminate sex trafficking on its platform. (*Id.*)

The undersigned finds Plaintiffs' argument unconvincing. As Defendant Perry Street correctly notes, Plaintiffs cannot establish that Defendant Perry Street made a material contribution to illegal communications by claiming that Defendant Perry Street *failed to monitor* those communications and *failed to implement* certain policies to prohibit those communications, as these claims do not allege affirmative conduct beyond merely providing a platform to communicate.[6] (*See* Dkt. No. 49 at 10); *see also M.H. v. Omegle.com, LLC*, Case No. 8:21-cv-814-VMC-TGW, 2022 WL 93575, at *5 (M.D. Fla. Jan. 10, 2022) ("Merely providing the forum where harmful conduct took place cannot otherwise serve to impose liability onto [an interactive computer service provider]."). The Complaint does not allege that Defendant Perry Street created,

---

[6] For this reason, the undersigned also finds that the CDA's carveout for civil claims predicated on violations of 18 U.S.C. § 1591 does not apply here. Indeed, the Complaint does not allege that Defendant Perry Street actually engaged in any conduct criminalized by § 1591 (*i.e.*, the sex trafficking of a minor). (*See generally* Dkt. No. 1.)

altered, or edited any of the communications at issue. (*See generally* Dkt. No. 1.) Rather, the Complaint makes clear that Defendants Mancino and Aspinwall created the content at issue and then proceeded to exchange that content using Scruff. (*Id.*) As such, the undersigned agrees that Defendant Perry Street "provided a communication service, and did not create the content." (Dkt. No. 49 at 7) (emphasis in original). This element of the required showing for CDA protection is therefore satisfied. *See Henderson*, 53 F.4th at 119.

**C. Publisher or Speaker**

The undersigned finds that Plaintiffs seek to hold Defendant Perry Street responsible as a "publisher or speaker" under the CDA, as well. For protection to apply under § 230(c)(1), Plaintiffs' claims must turn on some "information," and must treat the defendant as the "publisher or speaker" of that information. *See* § 230(c)(1) (No internet platform "shall be treated as the publisher or speaker of any information . . . ."); *see also Zeran*, 129 F.3d at 330 (describing § 230(c)(1) as protecting a defendant from being "liable for information" when the defendant acts in the "publisher's role" for that information). A claim treats a defendant "as the publisher or speaker of any information" when it (1) makes the defendant liable for publishing certain information to third parties, and (2) seeks to impose liability based on that information's improper content. *Henderson*, 53 F.4th at 120–21. When considering whether a claim treats the defendant as a publisher, Fourth Circuit precedent "teaches that we must look beyond the claim's formal elements. Beginning in *Zeran*, our Court has stressed a functional approach. In our functional analysis, we ask whether holding this defendant liable requires treating them as a publisher, not whether every abstract violation requires it." *Id*. at 124 (referencing *Zeran*, 129 F.3d at 332; *Erie Ins. Co. v. Amazon.com, Inc.*, 925 F.3d 135, 139 (4th Cir. 2019)).

Here, the Complaint states that "[t]he allegations against [Defendant Perry Street] . . . pertain *only* to policing and monitoring their platforms, not to publishing any kind of content" and that Plaintiffs seek to hold Defendant Perry Street liable for its "failure to monitor and police [its] platform" for "the horrendous content" created by Defendants Mancino and Aspinwall. (Dkt. No. 1 at 17.) More specifically, the Complaint alleges that "Defendant Perry Street [], through its platform, Scruff, facilitated Defendant Aspinwall's crimes by allowing him, a known sexual predator, to connect with other potential sexual predators on its platform" and that "[i]f Defendant Perry Street [] had been appropriately monitoring and policing its platform [], Defendant Aspinwall, a known sexual predator, would not [have] been able to create an account, or at the very least, would have been monitored to stop him from repeating his dangerous past alleged behavior." (*Id*. at 26.) Thus, Plaintiffs claim that Defendant Perry Street facilitated the harm suffered by Plaintiffs through its "negligence in failing to safeguard [its] platform[] from known sexual predators." (*Id*. at 27–28.) Plaintiffs assert that because their claims arise from Defendant Perry Street's facilitation of the harm to Plaintiffs, not its publishing of harmful content, Defendant Perry Street is not entitled to protection under the CDA. (*Id*. at 28; *see also* Dkt. No. 56.)

In reply, Defendant Perry Street contends that Plaintiffs' claims center around two decisions that do, in fact, qualify as "publishing activity" under the CDA: (1) Defendant Perry Street's decision to allow Defendant Aspinwall access to and use of Scruff, and (2) Defendant Perry Street's decision not to police communications between Defendant Aspinwall and Defendant Mancino (or any other users) on Scruff. (Dkt. No. 58 at 5.) Defendant Perry Street argues that the CDA treats both of these decisions as publishing activity and that, regardless of how Plaintiffs style their claims, such claims nonetheless base Defendant Perry Street's liability on the

dissemination of third-party information and attempt to impose liability based on the communications' improper content. (*Id.*; Dkt. No. 49 at 11.) The undersigned agrees.

Indeed, courts have repeatedly determined that the decision to allow access to and use of an internet application constitutes publishing activity covered by the CDA, as does the decision not to police communications between or among an internet application's users. *See, e.g.*, *Force v. Facebook*, *Inc.*, 934 F.3d 53, 65 (2d Cir. 2019) (explaining that providing a forum for terrorists to communicate "falls within the heartland of what it means to be the 'publisher' of information under Section 230(c)(1)"); *Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 21 (1st Cir. 2016) (concluding plaintiff's claims were barred by CDA, and noting that "claiming Backpage's decisions about what measures to implement deliberately attempt to make sex trafficking easier, [] is a distinction without a difference. Whatever Backpage's motivations, those motivations do not alter the fact that the complaint premises liability on the decisions that Backpage is making as a publisher with respect to third-party content."); *Doe on Behalf of Doe v. Grindr, LLC*, No. 5:23-cv-193-JA-PRL, 2023 WL 7053471, at *2 (M.D. Fla. Oct. 26, 2023) (noting that plaintiff's "artful pleading" was disingenuous and did not preclude CDA immunity where plaintiff claimed case was "solely about a failure to implement basic safety measures to protect minors . . . [but] [t]he foundation of Plaintiff's claim is that through communications on the Grindr platform, [two users] met and exchanged personal information that led to an in-person meeting and the sexual assault of [one user]. If Defendants had not allowed [one user] access to the app and published his communication with [the other user], the two would not have met and the sexual assault would not have occurred."); *Force v. Facebook, Inc.*, 304 F. Supp. 3d 315, 328 (E.D.N.Y. 2018) ("In the court's view, Facebook's decision to keep its platform as an open forum, available for registration and posting without prior approval from Facebook, is itself an exercise of editorial discretion."),

*aff'd in relevant part*, 934 F.3d 53 (2d Cir. 2019); *Fields v. Twitter, Inc.*, 217 F. Supp. 3d 1116, 1124–25 (N.D. Cal. 2016) ("Though plaintiffs allege that Twitter should not have provided *accounts* to ISIS, the unspoken end to that allegation is the rationale behind it: namely, that Twitter should not have provided accounts to ISIS *because ISIS would and has used those accounts to post objectionable content*.") (emphasis in original); *Saponaro v. Grindr, LLC*, 93 F. Supp. 3d 319, 325 (D. N.J. 2015) (dismissing "failure to police" claim against interactive computer service provider under Section 230).

Further, Plaintiffs' attempt to style their claims against Defendant Perry Street as a "design defect" issue does not preclude CDA immunity. (*See generally* Dkt. Nos. 1, 56.) Though not directly on point, the undersigned finds instructive a recent decision in which this Court evaluated whether Facebook was entitled to CDA immunity where a plaintiff sought to hold Facebook liable for a racially inspired murderous assault on the theory that Facebook's "design and architecture" took it out of the safe harbor of § 230. *See M.P. by & through Pinckney v. Meta Platforms, Inc.*, No. 2:22-cv-3830-RMG, 2023 WL 5984294, at *1–5 (D.S.C. Sept. 14, 2023). The Court explained:

> The *Zeran* court viewed Section 230 as a policy choice by Congress, weighing the potential benefits of a robust forum for "true diversity of political discourse" unfettered by potential tort liability of the internet service providers, against the potential harm associated with unregulated speech accessible to all. 129 F.3d at 330-331. Having determined that "tort based lawsuits" posed a threat "to freedom of speech in the new and burgeoning internet medium," Congress opted to provide broad immunity to service providers which published the materials of third parties. *Id.* at 330.
>
> In recent years, plaintiffs have sought to plead around Section 230 immunity by asserting product liability claims based on the theory that the algorithms and internal architecture of social media sites direct hate speech to persons inclined to violence and inflict harm on minorities and other victims of random acts of violence. They argue that the algorithms are well beyond the function of traditional publishers and that the social media sites themselves are a defective product.

In *Force*, the plaintiffs, American citizens who were injured by terrorist attacks by Hamas in Israel, asserted that Facebook facilitated and abetted a terrorist organization whose members utilized its services. *Force*, 934 F.3d at 53. By making its forum open to terrorists and "actively bringing Hamas' message to interested parties" through its algorithms, plaintiffs argued that the design of Facebook rendered it a non-publisher outside the umbrella of Section 230. The Second Circuit rejected this argument:

> We disagree with plaintiffs' contention that Facebook's algorithms renders it a non-publisher . . . . [A]rranging and distributing third party information inherently forms "connections" and "matches" among speakers, content, and viewers of content, whether in interactive internet forums or in more traditional media. That is an essential result of publishing. Accepting plaintiffs' argument would eviscerate Section 230(c)(1); a defendant interactive computer service would be ineligible for Section 230(c)(1) immunity by virtue of simply organizing and displaying content exclusively provided by third parties.

*Id.* at 66.

The Ninth Circuit, in *Dyroff v. Ultimate Software Group, Inc.*, 934 F.3d 1093 (9th Cir. 2019), recently took the same approach regarding a claim that a service provider's algorithms facilitated a communication between a drug seeker and a drug dealer, which ultimately resulted in the drug seeker's overdose death. In rejecting the plaintiff's product defect claim, the Ninth Circuit explained:

> It is true that Ultimate Software used features and functions, including algorithms, to analyze user posts on Experience Project and recommended other user groups. This includes the heroin-related discussion group to which [the drug seeker] posted and (through emails and push notifications) to the drug dealer who sold him the fentanyl laced heroin. Plaintiff, however, cannot plead around Section 230 immunity by framing these website features as content. We have held that what matters is whether the claims inherently require the court to treat the defendant as a publisher or speaker of content provided by another. If they do, then Section 230(c)(1) provides immunity from liability.

*Id.* at 1098.

Plaintiff here, just as the plaintiffs in other cases where they or their loved ones suffered injury or death following a wrongdoer accessing and using a social media website, argue that enormous harm has been inflicted on them and others by Congress' policy decision to provide Section 230 immunity to interactive computer services. Courts, having made a textual reading of the broad language of Section

> 230, have consistently interpreted the statute to bar claims seeking to hold internet service providers liable for the content produced by third parties. The balancing of the broad societal benefits of a robust internet against the social harm associated with bad actors utilizing these services is quintessentially the function of Congress, not the courts.

*Id.* at 3. Based on the foregoing, the Court in *M.P. by & through Pinckney* dismissed the plaintiff's common law claims. *Id*.

As in *M.P. by & through Pinckney*, Plaintiffs here attempt to hold Defendant Perry Street liable for "facilitating" harm, claiming that Defendant Perry Street's liability arises from "design defects," rather than user content. (*See generally* Dkt. No. 1.) As in *Force*, Plaintiffs also claim that Defendant Perry Street is liable for "matching" Defendant Aspinwall with other predators, like Defendant Mancino. (*See generally id*.) However, Plaintiffs cannot "plead around Section 230 immunity" in an attempt to style operations and decisions that inherently result from the publishing of third-party content as non-publisher activity. *See M.P. by & through Pinckney*, 2023 WL 5984294, at *3 (rejecting plaintiff's attempt to "plead around Section 230 immunity by asserting product liability claims based on the theory that the algorithms and internal architecture of social media sites direct hate speech to persons inclined to violence [and that] . . . the algorithms are well beyond the function of traditional publishers . . . ."); *Force*, 934 F.3d at 65 "[A]rranging and distributing third party information inherently forms 'connections' and 'matches' among speakers, content, and viewers of content, whether in interactive internet forums or in more traditional media. That is an essential result of publishing."); *Jane Doe No. 1*, 817 F.3d at 19 ("The broad construction accorded to section 230 as a whole has resulted in a capacious conception of what it means to treat a website operator as the publisher or speaker of information provided by a third party."); *see also L.W. through Doe v. Snap Inc.*, 675 F. Supp. 3d 1087, 1097 (S.D. Cal. 2023) (dismissing design defect claim because alleged flaws in platform's design essentially sought to impose liability based

on how well the platform prevented posting of third-party content containing child pornography and removed that content, which "more closely implicate[s] a publication function than a design or development function").

While the communications exchanged by Defendants Mancino and Aspinwall (and the actions that resulted therefrom) are deplorable, the CDA prohibits Plaintiffs from holding Defendant Perry Street—as the mere platform for the appalling exchanges between Defendants Mancino and Aspinwall—liable for their conduct. As such, the undersigned **RECOMMENDS** that the Court **GRANT** Defendant Perry Street's Motion to Dismiss (Dkt. No. 49) and dismiss Plaintiffs' claims against it in full. *See Marshall's Locksmith Serv. Inc. v. Google, LLC*, 925 F.3d 1263, 1267 (D.C. Cir. 2019) ("As courts uniformly recognize, § 230 immunizes internet services for third-party content that they publish . . . against causes of action of all kinds."); *Directory Assistants, Inc.*, 884 F. Supp. 2d 450 ("[T]he majority of federal courts have interpreted the CDA to establish broad 'federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of a service.'" (quoting *Whitney Info. Network, Inc.*, 2008 WL 450095 at *7; *Almeida*, 456 F.3d at 1321)).

## CONCLUSION

For the foregoing reasons, the undersigned **RECOMMENDS** that Defendant Perry Street's Motion to Dismiss (Dkt. No. 49) be **GRANTED**. The undersigned further **RECOMMENDS** that Plaintiffs' claims against Defendant Perry Street be **DISMISSED** in full, and that Defendant Perry Street be **DISMISSED** as a defendant in this civil action.[7]

**IT IS SO RECOMMENDED**.

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

May 31, 2024
Charleston, South Carolina

[7] The parties' briefings request a decision as to whether Plaintiffs may amend their Complaint. Because there is no pending motion to amend with a proposed amended complaint attached, the undersigned need not opine on this issue. However, the undersigned notes that amendment would likely be futile here in light of the CDA.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).